Williams, J.
The case was submitted to the court of common, pleas upon the pleadings, and some questions are raised here as to their effect, which will be noticed before considering the more important questions in the case. It is first claimed that it was error to render judgment for the plaintiff without proof of the .value of the items of the account attached to the petition, because the allegations of their value were not admitted by the failure to controvert them by answer. The petition, however, does not seek to recover the value of the services of the watchman, or of the signal supplies, but the amounts paid and expended by the plaintiff therefor. There are no allegations of value in the petition to be controverted by answer, or considered as controverted by failure to answer; and if there were, the court might in its discretion render judgment, without proof. It has been held by this court that where judgment is rendered on default for *583 answer in such case without requiring proof, there is no error for which the judgment will be reversed. Dallas vs. Ferneau 25 Ohio St. 635. And the reasons for so holding apply with equal force to cases where the defendant answers, leaving unchallenged the items of the account, and defends upon another and distinct ground, such as payment, or as in this case, that the defendant by agreement between the parties, was exonerated from payment, and consents to the submission of the case, without questioning the correctness of any item in the account. Again it is claimed by the plaintiff in error that the answer puts in issue the averments of the petition, because it denies “ that the defendant became liable to bear any part of the expense of putting in the crossing and watchman’s house and maintaining the same or any part of the expense of maintaining the watchman at the crossing ”; and also denies “that the defendant is now or ever was indebted to the plaintiff or to the Cleveland, Mt. Vernon & Delaware Railroad Company, by reason of the jmtting in and maintaining said crossing, watchman’s house, and Avatchman at said crossing in any sum whatever.” These denials are mere conclusions of laAvs or denials of such conclusions. Rolling Stock Co. v. Railroad, 34 Ohio St. 467; Larimore v. Wells, 29 Ohio St. 13; Knox County Bank v. Lloyd, 18 Ohio St. 353. Beside, they are to be regarded as conclusions of the pleader draAvn from the statement of facts accompanying them, and Avhich constitutes the real defense. It will be noticed that the defendant denies its liability and indebtedness to the plaintiff, “for it avers” that the Cleveland, Mt. Vernon & Delaware Railroad Company agreed with the defendant for a valuable consideration paid it by the defendant, to put in the crossing, build the watchman’s house,1 and forever keep the same in repair and maintain the Avatchman at the crossing at its OAvn expense, and without cost or expense to the defendant, and that it Avas in pursuance of this agreement the expenditure mentioned in the petition was made. Looking to the Avhole answer, its proper construction and effect is, that because of the facts so stated it is not liable or indebted upon the cause of action set up in the petition. No material al *584 legation of fact in the petition is controverted by the answer, but the liability and indebtedness therein charged against the defendant are sought to be avoided on the ground that the plaintiff had already been compensated therefor under the agreement referred to. This is an affirmative defense, which, if not controverted by reply, should be taken as true, and either so admitted or established by proof would constitute a complete bar to the action. The effect of the reply denying the allegations of the answer, therefore, was to put the defendant upon proof of the agreement alleged; and as no evidence was given on the trial of the action, but the case was submitted upon the pleadings, the answer availed the defendant nothing, leaving the petition of the plaintiff uncontroverted. Practically therefore the case was submitted to the court as upon default or demurrer to the petition.
Adopting this view of the pleadings, the plaintiff in error contends that judgment should not have been rendered against it upon the case made in the petition:
1. ' Because it appears that the Baltimore & Ohio Railroad Company was not the owner of the railroad crossed by the Cleveland, Mt. Vernon and Delaware Railroad, but was a lessee thereof only; and,
2. It does not appear that the defendant either requested the plaintiff or the company of whose road he is receiver to incur the expenditure, or promised to pay its proportion of such expense.
I. It is conceded by the plaintiff that his light to maintain the action depends largely, if not solely, upon section 3333 of the Revised Statutes, and the construction to be given to it. It reads as follows:
“ Sec. 3333. When the tracks of two railroads cross each other, or in any way connect, at a common grade, the crossing shall be made and kept in repair, and watchmen maintained thereat, at the joint expense of the companies owning the tracks; all trains or engines passing over such tracks shall come to a full stop not nearer than two hundred feet nor further than eight hundred feet from the crossing, and shall not cross until *585 signalled so to do by tbe watchman, nor until the way is clear; and when two passenger or freight trains approach the crossing at the same time, the train on the road first built shall have precedence, if the tracks are both main tracks over which all passengers and freights on the roads are transported; but if only one track is such main track, and the other is a side or depot track, the train on the main track shall take precedence ; and if one of the trains is a passenger train and the other a freight train, the former shall take precedence; and regular trains on time shall take precedence over trains of the same grade not on time; and engines with cars attached, not on time, shall take precedence of engines without cars attached, not on time.”
In the argument it is contended the ownership of the Cleveland, Mt. Vernon & Delaware road is not properly stated in the petition. But this sufficiently appears, for it is avered that the corporation was created and organized under that name, and that it built the road and operated it until the receiver was appointed in 1880., This point is not much relied on'by the counsel for plaintiff in error.
The real contention is, that the statute applies only to railroad companies owning the tracks which cross each other or connect at a common grade, and companies operating roads as lessees are not owners. The terms “owner” and “owning” depend somewhat for their signification xxpon the connection in which they are used. “ To own” is defined “ to hold as property; to have a legal or rightful title to; to have; to possess,” andan “owner” is “one xvho owns; a rightfxxl proprietor.” An owner is not necessarily one owning the fee simple, or one having in the property the highest estate it will admit of. One having a lesser estate may be an owner, and indeed, thei’e may be different estates in the same property vested in different persons and each be an owner thereof. In the construction of statutes, to ascertain the proper meaning of sxxch terms, regal’d must be had to their various provisions, and sxich effect given them as these provisions clearly indicate they were intended to have, and as will render the statute operative. Thus, xxnder the mechanic’s lien statute of March 11,1843, (41 Ohio L. 66), *586 which provided “ that any person who shall perform labor or furnish material for constructing or repairing any building * * by virtue of a contract or agreement with the owner shall have a lien * * upon such building * * and the lot of land upon which the same shall stand,” it was held that the word “ owner ” is not limited in its meaning to an owner of the fee, but includes also an owner of a leasehold estate. Choteau v. Thompson, 2 Ohio St. 114; Dutro v. Wilson, 4 Ohio St. 101.
In Gilligan v. The Board of Alderman, 11 R. I. 258 it is held that “ a tenant for life or years, or from year to year, is an owner,” within the provisions of the statute which gave “ compensation to abutting owners for damages caused by a change of grade in highways.” And under a statute which provided that “ when any passenger shall die from any injury resulting from or occasioned by any defect or insufficiency in any railroad or part thereof, or in any locomotive or car, the corporation which owns any such 'railroad) locomotive or car at the time such injury is received, resulting from or occasioned by any defect or deficiency above declared, shall forfeit and pay for every passenger so dying the sum of five thousand dollars,” the supreme court of Missouri held that the word “owner” in the act did not mean “ the absolute owner, in whom the absolute right of property is vested,” but means “ the owner for the time being, the corporation for the time being operating, controlling and managing the road, locomotive or car.”
The provisions of section 3333, as well as those of the next two sections, were intended to prevent collisions of trains, and engines, and similar calamities at railroad crossings, often destructive of human life, beside inflicting heavy losses on the companies operating the roads; and they are well calculated for that purpose. They properly require all trains and engines passing on the tracks of either road to come to a full stop before crossing, and not to cross until signalled by the watchman ; and fix the order of precedence among trains and engines at the crossings. The managing agents and superintendents arc rcqiiircd to publish to the employes such rules and regulations as shall secure strict compliance with the provisions of the statutes, and engineers and others in charge of engines *587 who fail to bring them to a stop, or cross before being signalled to do so by the watchman, are subjected to penalties, and they, as well as the companies employing them, are made liable for the damages resulting from such neglect. These, or some such regulations, are indispensable to the actual operation of the roads. They are necessary for the safety of passengers and property transported over those roads, and none the less so to their convenient and successful management by the companies engaged in operating them, and to the protection of their property and employes. The services of the watchman consist in giving the proper signals to approaching trains and engines, and to enable him adequately to perform this service it becomes necessary to build and maintain the watchman’s house. His service pertains wholly to the actual operation of the roads, and inures entirely to the benefit of the companies operating them.
The necessity for keeping the crossings in repair and maintaing watchmen thereat, grows out of the use and operation of the railroads whose tracks cross each other at a common grade, and lessee companies having the possession and control of the roads and operating them as such, receive all the advantages and security resulting from safe crossings, and the services of the watchman, as fully in all respects as companies that are the absolute owners thereof, could if they were operating them, and it would appear but reasonable, that while operating the roads they should receive the benefits subject to the burden of their expense as provided by the statute ; and we are of the opinion that such lessees are companies “ owning the tracks ” of the roads operated by them, in the sense in which that phrase is used in the statute.
II. It is further contended that the petition fails to state a right of action against the defendant, because it does not show the defendant requested the expenditure, for a portion of which it was sued, or that it promised to pay any part of it. The statute, it is claimed, does not authorize one company to make all the expenditure rendered necessary to comply with its provisions, and sue the other for half or any part of the samo. And there being no express agreement alleged nor any *588 request from the defendant or subsequent promise or ratification by it, from which one might be implied by law, the case, it is urged, falls within that class of voluntary outlays of money which give no right of action. Generally where one person voluntarily pays money for another, under such circumstances that the other is not at liberty to accept or reject the advantage of it, but is obliged to accept it, his acceptance, of what he was not at liberty to reject, is no evidence of ratification or adoption, and raises no implied promise to pay. This rule has been applied to tenants in common, where repairs or improvements of the common property have been made by one tenant without the consent of the other, and it is insisted the railroads in question were tenants in common, and to be governed by that rule. In the cases where the rule stated is enforced it will be found that it was entirely optional with the tenant making the expenditure, whether he would incur it or not. That he might, or not as he chose ; and there was no duty resting upon him to do so, either by contract, or arising from his relation to the co-tenant. In other words the expenditure was purely voluntary, and this lays at the foundation of the rule. But we apprehend the rule is inapplicable to a case like this, where the two companies were under a joint obligation to perform a lawful duty involving the expenditure of money, and one in performance of the common duty, discharged the whole obligation. It cannot, in such case, be said the payment is wholly voluntary. The rule is as well established as the one already refered to, that where two or more are under a joint obligation and one discharges the whole, he shall have contribution from the others. Usually this obligation is created by contract, but it can make no difference in principle whether it be by contract-or operation of law, so long as the obligation is joint and not unlawful.
“ The doctrine of contribution rests upon the broad principle of justice, that whore one has discharged a debt or obligation which others were equally bound with him to discharge, and thus removed a common burden, the others who have received a benefit ought in conscience to refund to him a rateadle proportion. It depends rather upon principles of equity *589 than upon contract. * * * From the equitable obligation the law implies a contract, since all who have become jointly liable may reasonably be considered as mutually contracting among themselves with reference to the duty in conscience.” 2 Wait’s Actions & Def. p. 288, and cases cited. In Bishop on Contracts, section 238, it is said, “ when a duty is cast upon one by statute, or by equity and good conscience (the standard whereof is to be be found in the books of the law rather than in those on moral science) or in any way by the law, whether statutory or common, or when one has been benefited by another who was discharging such duty * * the law creates a promise from him to do the thing or pay for the benefit.”
And again, in sections 204,205, the same author says : “ The law, by placing its command in whatever form upon one to do a thing for the benefit of another or the state, creates the promise from the former to the latter to do it; as for example in the words of Blackstone ‘ whatever the laws order any one to pay, that becomes instantly a debt, which he hath beforehand contracted to discharge.’ Thus when a statute imposes on one a duty the law creates a promise from him to the party to be benefitted thereby to perform it.” The application is obvious. A joint duty is by statute imposed upon railroad' companies, whose roads cross at grade, to keep such crossings in repair, and maintain watchmen thereat, at their joint expense. The obligation is equally binding upon both companies, and neither can with impunity omit the performance of the duty or ignore the obligation. When, therefore, one performs the whole duty and discharges the entire obligation resting upon both, it can with no propriety be said to be a mere voluntary act. One purpose of the statute undoubtedly was to promote the safety of people who travel over the roads, and the security of the property carried over them; and in this respect the duty of the companies under it, is to the state and its citizens. But while this may have been the principal object of the statute, it also fixes the legal rights of the companies as between themselves and imposes duties upon each to the other. These rights and duties pertain to the use of the common *590 crossing, and among the duties, both to the state and toward each other, are those of keeping the crossing in repair and maintaining watchmen at their joint expense. Either may therefore lawfully do whatever is necessary to their performance. Applying the principle stated by Bishop on Contracts cited supra, the law’s command created the joint promise of the companies to the state, and the several promise of each to the other to perform the duties prescribed by the statute. In this sense the obligation of the companies becomes one of contract, and one of them having discharged the whole obligation, and the other no part of it, though receiving the full benefit, there is no reason why it should not, upon the principle already stated, be entitled to reimbursement from the latter for its share of the common burden borne by the former.
The case of Middleborough v. Taunton, 2 Cush. 406, relied on by counsel for plaintiff in error, is not inconsistent with the conclusion announced; but, as we understand the case, is in harmony with it. In that case it appeared that the town of Middleborough was indicted for neglecting to repair one of its highways. It confessed the indictment and was fined. The court appropriated the fine to the repair of the higway and appointed an agent to superintend its application. The plaintiff alleged that the highway was upon the dividing line between it and the town of Taunton and the duty of repairing the same was equally incumbent on both towns. The dispute in the case was whether there was a common obligation on both towns to repair the highway. The defendant contended the whole of it was within the town of Middleborough, or if not, the center of the highway was the dividing line, and each town was bound to keep in repair such highways only as were within their respective limits. The trial court ruled that the whole of the way.was within Middleborough, and the plaintiff became non-suit, subject to the opinion of the whole court. It does not appear to have been questioned that if to both towns belonged the joint or common duty tore-pair the highway, the plaintiff should have recovered. But since that was not the case the judgment was affirmed.
Shaw, C. J., in the opinion says:
*591 “ But it is said that towns are by law (Rev. Stats. c. 25, §1), obliged to repair highways; and it is certainly true, that all highways ‘ within the bounds of any town ’ are to be kept in repair at the expense of such town. If towns repair beyond their bounds without an actual request, it is a voluntary act done in pursuance of no obligation or duty, and money laid out for such purpose is not expended at the implied request of the town subject to the duty of such repairs * * *. It seems to us, therefore, that the case of plaintiff falls within this dilemma. If the road was wholly in Middleborough the plaintiffs have merely performed their own duty and paid their own debt. If one-half of it, only, was in Middleborough, the other was in another town and county * and the plaintiffs, if they have laid out money to repair it, have done so in pursuance of no actual request or of any common duty or obligation constituting a request in law ; and, of course, that an action for money paid will not lie.”
It would seem to follow from the reasoning of the learned chief justice, that if the fiioney had been expended in the discharge of a common obligation belonging to both towns to repair the way, the action would have lain.
The further claim is made by the plaintiff in error that, while the statute provides that the expense of keeping the crossing in repair and maintaining watchmen shall be borne by the companies jointly, it is silent in regard to the proportion to be borne by each; and as one company may require the watchman’s services many times more than the other, the expenses should be apportioned accordingly. "Whether in such case the expenses should be apportioned on the basis indicated, or upon any state of facts an unequal division could under the statute be made, we need not decide. Such circumstances of inequality of benefits are not shown, nor does any other reason appear, making an equal division of the burden unjust. If any such existed the defendant should have made it to appear.
The correct rule on this subject is clearly stated in Bishop on Contracts, sec. 216, as follows:
“When persons are under equal obligations to do a thing, *592 not violative of law, and one of them does it, if there is no circumstance rendering the equities between them otherwise than equal, and no express agreement, the doer is entitled, under a promise which the law creates, to recover such sums of his several companions as shall leave the burden equal. This is the familiar rule as between sureties and other joint promisors, where one has discharged more than his proportion of a debt, and it applies also in other like cases.”
We think the right of the plaintiff to recover upon tbe case made in his petition is sustained by sound reason and sanctioned by authority, and the judgment recovered by him should be affirmed.

Judgment affirmed.